**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RONALD E. COGGINS, Individually and on Behalf of All Others Similarly Situated, | § § § § § § | CIVIL ACTION NO. 4:21-cv-03574 |
| | § | **MOVANT GEORGE C. SMITH, JR.'S** |
| | § | **OPPOSITION TO COMPETING LEAD** |
| Plaintiff, | § | **PLAINTIFF MOTIONS** |
| | § | |
| | § | CLASS ACTION |
| vs. | § | |
| | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| CAMBER ENERGY, INC., JAMES A. DORIS, and FRANK W. BARKER, JR., | § § § § | |
| | § | |
| Defendant. | § § | |

**TABLE OF CONTENTS**

Page(s)

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... ii-iv

ARGUMENT ................................................................................................................... 1

    I.      THE LAURENT GROUP AND THE CAMBER INVESTOR
            GROUP ARE INADEQUATE AND ATYPICAL ...................................... 2

          A.     The Laurent Group and the Camber Investor Group are
                  Improper Lawyer-Made Groups of Unrelated Investors ................... 2

          B.     The Laurent Group's and the Camber Investor Group's
                  Dispute Resolution Schemes Ensure a Person with a Lesser
                  Financial Interest than Mr. Smith Controls the Litigation ................. 6

          C.     Gestion Benoit Vendette QC, Inc. is an Atypical High
                  Frequency Trade ............................................................................... 7

          D.     Gestion Benoit Vendette QU, Inc. Continued to Purchase
                  (and Sell on the Same Day) Camber Securities After the Truth
                  Was Revealed ................................................................................... 9

    II.     MR. SMITH SHOULD BE APPOINTED LEAD PLAINTIFF ................. 10

    III.   COMPETING MOTIONS SHOULD BE DENIED ................................... 11

    IV.   MR. SMITH'S SELECTION OF COUNSEL SHOULD BE APPOINTED 12

CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

Cases                                                                        Page(s)

*Abouzied v. Applied Optoelectronics, Inc.*,
 2018 WL 539362 (S.D. Tex. Jan. 2018) ........................................................................ 5

*Berger v. Compaq Comput. Corp.*,
 257 F.3d 475 (5th Cir. 2001) ....................................................................................... 2

*Berwecky v. Bear, Stearns & Co.*,
 197 F.R.D. 65 (S.D.N.Y. 2000) ................................................................................... 9

*Eichenholtz v. Verifone Holdings, Inc.*,
 2008 WL 3925289 (N.D. Cal. Aug. 2008) ................................................................7-8

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ....................................................................................... 8

*In re Cavanaugh,*
 306 F.3d 726 (9th Cir. 2002) ..................................................................................... 11

*In re Cloudera, Inc. Sec. Litig.*,
 2019 WL 6842021 (N.D. Cal. Dec. 2019) ................................................................... 3

*In re Enron Corp., Sec. Litig.*,
 206 F.R.D. 427 (S.D. Tex. 2002 ................................................................................. 3

*In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*,
 209 F.R.D. 447 (C.D. Cal. 2002) ................................................................................ 3

*In re Landry's Seafood Rest., Inc.*,
 2000 WL 33999467 (S.D. Tex. 2000) ......................................................................2-3

*In re Level 3 Commc'ns, Inc.*,
 2009 WL 10684924 (D. Colo. May 2009) ................................................................... 5

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
 2013 WL 6145114 (S.D.N.Y. Nov. 2013) ................................................................... 7

*In re Netflix Inc., Sec. Litig.*,
 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ............................................................. 8

*In re Opnext, Inc. Sec. Litig.*,
  2008 WL 3285732 (D.N.J. Aug. 2008) ............................................................... 8

*In re Ply Gem Holdings, Inc., Securities Litigation*,
  2014 WL 12772081 (S.D.N.Y. Oct. 2014) ........................................................... 4

*In re Snap Inc. Sec. Litig.*,
  2019 WL 2223800 (C.D. Cal. Apr. 2019) ........................................................8-9

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) ...........................................................5-6

*In re Superior Offshore Int'l, Inc. Sec. Litig.*,
  2008 WL 2148745 (S.D. Tex. May 2008) .......................................................... 10

*In re Waste Management, Inc.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000 ............................................................2-3

*Jakobsen v. Aphria, Inc.*,
  2019 WL 1522598 (S.D.N.Y. Mar. 2019) .......................................................4-5

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019).............................................................3-4

*Koffsmon v. Green Dot Corp.*,
  2021 WL 3473975 (C.D. Cal. Aug. 2021).......................................................... 7

*Koos v. First Nat'l Bank,*
  496 F.2d 1162 (7th Cir. 1974) .......................................................................... 8

*Makhlouf v. Tailored Brands, Inc.*,
  2017 WL 1092311 (S.D. Tex. Mar. 2017)......................................................... 3

*Rocco v. Nam Tai Electronics, Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) ...................................................................... 9

*Sayce v. Forescout Tech., Inc.*,
  2020 WL 6802469 (N.D. Cal. Nov. 2020) ......................................................... 8

*Stires v. Eco Science Solutions, Inc.*,
  2018 WL 5784817 (D.N.J. Feb. 2018) .............................................................. 4

*Takata v. Riot Blockchain, Inc.*,
　2018 WL 5801379 (D.N.J. Nov. 2018) .......................................................................4-6

*Tsirekidze v. Syntax-Brillian Corp.*,
　2008 WL 942273 (D. Ariz. Apr. 2008) ..............................................................3, 5-7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
　589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................................................ 3

Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii)............................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................... 8, 10, 11

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................... 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ............................................................................ 12

Movant George C. Smith, Jr. ("Movant" or "Mr. Smith"), respectfully submits this Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel. Dkt. Nos. 19, 22, 24, and 25.[1]

Mr. Smith, as explained in his opening brief, is a sophisticated investor with 35 years of investing experience. Dkt. No. 18 at 9. He is also the chief executive officer of a private print company. *Id*. Mr. Smith lost approximately $263,242. *Id*. at 7.

No individual claims a larger loss than Mr. Smith. *See* Dkt. Nos. 18-2, 19-4, 23-2, 25-2 at 5-10 and 26-3.

Two unrelated groups of movants claim a larger *combined* loss than Mr. Smith:

- Robert Laurent ($227,547 in losses) and Ajmal Hussain ($218,623 in losses), together the "Laurent Group" with $446,171 in losses; and

- Mark Kim (approximately $149,000 in losses) and Gestion Benoit Vendette QC, Inc. (approximately $236,000 in losses), together the "Camber Investor Group" with approximately $387,000 in losses.

However, none of the competing movants have made the initial showing of Rule 23 adequacy and typicality required to trigger the most adequate plaintiff presumption under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Further, no individual claims a larger loss than Mr. Smith.

The Laurent Group and Camber Investor Group are inappropriate group movants solely brought together by counsel to create the largest financial interest. Their members

---

[1] On January 14, 2022, movant Roderick A. Yamat filed a notice of non-opposition to competing lead plaintiff motions. Dkt. No. 30.

are in different states and countries and no specific client driven reasons are provided for the groupings. The joint declarations submitted by the two groups are the type of general conclusory declarations that courts have rejected. Additionally, Gestion Benoit Vendette QC, Inc. is an atypical day-trader which continued to buy tens of thousands of shares after the full truth was revealed.

In contrast to the inadequate and atypical movants noted above, Mr. Smith lost $263,242. In short, Mr. Smith should be appointed Lead Plaintiff, and his selection of Lead Counsel should be approved.

## ARGUMENT

**I.    THE LAURENT GROUP AND THE CAMBER INVESTOR GROUP ARE INADEQUATE AND ATYPICAL**

### A.    The Laurent Group and the Camber Investor Group are Improper Lawyer-Made Groups of Unrelated Investors

The Laurent Group and the Camber Investor Group (together, the "Groups") are impermissible groups of *unrelated* individuals. Lead plaintiff movant groups such as these, with no pre-litigation relationship, have been squarely rejected by the well-established precedent of the Fifth Circuit and this District. *See, e.g., Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001) (embracing "the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation ***and a pre-litigation relationship based on more than their losing investment*....**") (internal citations omitted) (emphasis added); *In re Waste Management, Inc.*, 128 F. Supp. 2d 401, at *411 (S.D. Tex. 2000); *In re Landry's Seafood Rest., Inc.*, 2000 WL 33999467, at *4 (S.D. Tex. 2000).

"Although the PSLRA allows groups to serve as lead plaintiffs, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (quoting *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)); *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019).

Courts require members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). Courts evaluate evidence of:

> (1) the existence of a pre-litigation relationship between group members;
> (2) involvement of the group members in the litigation thus far; (3) plans
> for cooperation; (4) the sophistication of its members; and (5) whether the
> members chose outside counsel, and not vice versa.

*Id.*; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008); *see In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002) ("[proposed] group must be restricted to a few cohesive parties and the movant ***must bear the burden of demonstrating…a pre-litigation relationship based on more than losing the investments at issue***.") (emphasis added); *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *10 (S.D. Tex. Mar. 23, 2017) (refusing to appoint group of two institutional investors that "lack[ed] a pre-litigation relationship based on more than

3

losing investments at issue" and finding "[t]o satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of the lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be permitted.").

While the Laurent Group and the Camber Investor Group submitted joint declarations in an effort to meet this burden, their boilerplate declarations are insufficient. While the Groups assert that their members spoke with each other prior to the lead plaintiff motion being filed, "what is conspicuously absent [. . .] is any information regarding how these [. . .] apparent strangers [. . .] found each other." *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" whose members "span[] the country's geography"); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *Kniffin*, 379 F. Supp. 3d at 263 (court not persuaded by declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would

4

encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018), reconsideration denied, 2019 WL 2710273 (D.N.J. June 26, 2019) (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.").

Lastly, the Court should not permit the members of the Groups to be considered individually as the Groups did not request that any of their constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Groups. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze*, 2008 WL 942273, at *4 (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate

5

motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts.").

In short, as the *Tsirekidze* Court noted, "[t]here is simply no evidence that [these] group[s] ha[ve] a meaningful connection" and the Court should deny the motions of the Laurent Group and the Camber Investor Group. 2008 WL 942273, at *5.

**B.      The Laurent Group's and the Camber Investor Group's Dispute Resolution Schemes Ensure a Person with a Lesser Financial Interest than Mr. Smith Controls the Litigation**

Both groups acknowledge that group members may disagree with each other but put forward dispute resolution systems with major flaws.

The Laurent Group's supposed dispute resolution mechanism is to hold "a simple majority vote, in which each of us possesses a number of votes equivalent to our respective loss incurred in connection with our Class Period purchases of Camber securities, calculated in U.S. dollars[,]" (Dkt. No. 26-4 at 3 ¶5) which means that Mr. Laurent would be able to out-vote Mr. Hussain on every issue (Dkt. No. 26-3).

The Camber Investor Group's supposed dispute resolution mechanism is to hold a "majority vote based on number of shares retained through the end of the class period" (Dkt. No. 25-2 at 15 ¶7) which means that Gestion Benoit Vendette QC, Inc. would be able to out-vote Mr. Kim on every issue (Dkt. No. 25-2 at 6-7 and 9-10).

6

First, both dispute resolution systems give control to one member of each group for all disputes—completely eviscerating the façade of a group.

Second, both dispute resolution systems transparently fly in the face of the PSLRA. Mr. Smith has the largest individual financial interest in this case and the dispute resolution systems would allow individuals with smaller financial interests to control the case. *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2013) (rejecting a lead plaintiff movant group with a similar dispute resolution system); *Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021) (noting that a dispute resolution system would "rais[e] the possibility that litigation decisions will be driven by two investors … with relatively small financial interests at stake.").

### C.    Gestion Benoit Vendette QC, Inc. is an Atypical High Frequency Trader

Gestion Benoit Vendette QC, Inc. is a high frequency trader (also called a day-trader). *See* Dkt. No. 25-2 at 9-10.

For instance, on September 14, 2021, Benoit Vendette QC, Inc. bought 25,000 shares at $1.58/share and bought 25,000 shares at $1.45/share. Dkt. no. 25-2 at 9. Then, that same day, Benoit Vendette QC, Inc. sold 50,000 shares at $1.62/share. *Id*. It also bought an additional 25,000 shares at that same higher price. *Id*.

Courts refuse to appoint high frequency traders as they are subject to unique reliance defenses. *Tsirekidze*, 2008 WL 942273, at *4 (finding high frequency trader atypical because such trading "belies any true reliance on company reports or even on the

integrity of the stock price itself"); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *1 (N.D. Cal. Aug. 22, 2008) (finding a high frequency trader atypical from the class "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility"); *In re Opnext, Inc. Sec. Litig.*, 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses").

Benoit Vendette QC, Inc. is not a typical class member. It is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Sayce v. Forescout Tech., Inc.*, 2020 WL 6802469, at *4 (N.D. Cal. Nov. 19, 2020) ("'The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class....[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) ("Importantly, '[t]here is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial.'") (quoting *In re Netflix Inc., Sec. Litig.*, 2012 WL 1496171, at * 5 (N.D. Cal. Apr. 27, 2012)); *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative.").

**D.    Gestion Benoit Vendette QC, Inc. Continued to Purchase (and Sell on the Same Day) Camber Securities After the Truth was Revealed**

As further evidence that Gestion Benoit Vendette QC, Inc.'s high frequency trading scheme is atypical and problematic, it continued to buy and sell Camber stock after the full truth came out. Dkt. No. 25-2 at 9-10.

After the full truth is alleged to have been revealed on October 5, 2021, Gestion Benoit Vendette QC, Inc. continued to buy 225,000 shares for $323,250 on October 12, 2021. *Id*. Then, as per its consistent high frequency model, it sold those 225,000 shares for a gain at $359,000 on that same day. *Id*. Finally, Gestion Benoit Vendette QC, Inc. continued to buy an additional 75,000 shares on October 12, 2021 and then sell them all on October 14, 2021. *Id*.

Courts refuse to appoint lead plaintiffs that made significant purchases after the disclosure of fraud. *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("This court has consistently held that 'a person that increasing his holdings in a security after the revelation of an alleged fraud involving hat security is subject to an unique defense that precludes him from serving as a class representative.'") (quoting *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000)); *Snap Inc.*, 2019 WL 2223800, at *2 (rejecting lead plaintiff movant because of his significant post fraud disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance.").

Importantly, Gestion Benoit Vendette QC, Inc. adopted the claims in the complaint: "Movant has reviewed a complaint against Camber Energy, Inc. in the action

9

filed and adopts the allegations therein." Dkt. No. 25-2 at 8 ¶1; *see also* Dkt. No. 25 at 10-11. Gestion Benoit Vendette QC, Inc. did not raise any issue with the Class Period or allege any further corrective disclosures in its motion.

This confirms that Gestion Benoit Vendette QC, Inc. is a high frequency trader unconcerned by Camber's false statements and the truth about its business and subject to unique defenses.

## II.    MR. SMITH SHOULD BE APPOINTED LEAD PLAINTIFF

Mr. Smith, with losses of $263,242, is the presumptive Lead Plaintiff as he has the largest financial interest and satisfies the typicality and adequacy requirements of Rule 23. *See, In re Superior Offshore Int'l, Inc. Sec. Litig.*, 2008 WL 2148745, at *1 (S.D. Tex. May 20, 2008) ("Where a plaintiff bases his claim to have the largest financial loss on the aggregate loss of several investors, the group must have a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action.") (internal citations omitted).

Mr. Smith should be appointed Lead Plaintiff, and his selection of Lead Counsel should be approved.

To overcome the strong presumption entitling Mr. Smith to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case, and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the presumption in favor of Mr. Smith. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively

10

most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive Lead Plaintiff, here Mr. Smith, will not adequately protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As Mr. Smith has made a demonstration of his typicality and adequacy and has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Smith must be appointed Lead Plaintiff.

### III.   COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as Mr. Smith satisfies the requirements of Rule 23, has the greatest financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *In re Cavanaugh,* 306 F.3d 726, 732 (9th Cir. 2002) ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

The remaining competing movants after Mr. Smith (and the improper Groups) all hold smaller financial interests: Tariq Khan with an approximate loss of $101,716 (Dkt. No. 23-2) and Juma Salarzi with an approximate loss of $58,252 (Dkt. No. 19-4)

In no way is Mr. Smith conceding or acknowledging that the competing movants are adequate or that their claims are typical. Mr. Smith reserves the right to address the competing movant's adequacy or typicality, should the Court reach those motions.

### IV.   MR. SMITH'S SELECTION OF COUNSEL SHOULD BE APPOINTED

11

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Smith has selected The Rosen Law Firm, P.A. as Lead Counsel and Steckler Wayne Cochran Cherry PLLC as Liaison Counsel. The firms have the resources and expertise to litigate this action efficiently and aggressively. As the firms' resume reflect, they are highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 18-2 at 15-70. Thus, the Court may be assured that by approving Mr. Smith's selection of counsel, the members of the class will receive excellent legal representation.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (a) appointing Movant as Lead Plaintiff of the class; (b) approving The Rosen Law Firm P.A. as Lead Counsel and Steckler Wayne Cochran Cherry PLLC as Liaison Counsel; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: January 18, 2022                     Respectfully submitted,

**STECKLER WAYNE COCHRAN
CHERRY PLLC**

 */s/ Stuart L. Cochran*
Stuart L. Cochran, Attorney-in-charge
Texas Bar No. 24027936
S.D. Tex. Bar No. 24027936

12

12720 Hillcrest Road, Suite 1045
Dallas, Texas 75219
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: stuart@sgc.law

*[Proposed] Liaison Counsel for Plaintiff and Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq. (pro hac vice to be filed)
Phillip Kim, Esq. (pro hac vice to be filed)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*

## CERTIFICATE OF WORD COUNT

I hereby certify that on this 18th day of January 2022, the above Movant George C. Smith, Jr.'s Opposition to Competing Lead Plaintiff Motions contains 3,185 words.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

13