# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD E. COGGINS, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Case   No.   4:21-cv-03574 |
| CAMBER ENERGY, INC., JAMES A. DORIS, and FRANK W. BARKER, JR., | § § § § | |
| Defendants, | § | |

## CAMBER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.      Plaintiffs cannot substantiate their novel pure-omission theory—under Item 3.02 specifically, or Rule 10b-5 generally. ............................................................... 1

      A.      Plaintiffs ignore Item 3.02's text and flout the SEC's interpretive guidance................................................................................................................. 1

      B.      Plaintiffs cannot point to a misleading "statement." .................................... 3

II.     Plaintiffs cannot rescue the Scheme Liability Claim. .............................................. 5

      A.      No actionable deceptive act exists. ............................................................. 5

      B.      Rule 9(b) bars the SAC's barebones "scheme" allegations. ......................... 6

III.    Plaintiffs detour around key scienter shortcomings. ............................................... 7

      A.      Unpleaded "facts" do not a strong inference of scienter make. ................... 7

      B.      No clear-and-obvious duty to disclose supports scienter. ............................ 8

IV.     Plaintiffs fail to salvage the Kerrisdale Report as a corrective disclosure. .............. 9

V.      Control-person liability fails. ................................................................................ 10

Conclusion .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bo Shen v. Exela Techs., Inc.*,
2021 WL 2589584 (N.D. Tex. June 24, 2021) ............................................................ 4

*Gelfer v. Pegasystems, Inc.*,
96 F. Supp. 2d 10 (D. Mass. 2000) ........................................................................... 7

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) ................................................................................... 3

*In re BP p.l.c. Sec. Litig.*,
922 F. Supp. 2d 600 (S.D. Tex. 2013) ...................................................................... 8

*In re Cabletron Sys. Inc.*,
311 F.3d 11 (1st Cir. 2002) ...................................................................................... 7

*In re Galena Biopharma, Inc. Sec. Litig.*,
336 F. Supp. 3d 378 (D.N.J. 2018) ........................................................................... 4

*In re PolarityTE, Inc., Sec. Litig.*,
-- F. Supp. 3d --, 2020 WL 6873798 (D. Utah Nov. 22, 2020) ................................. 10

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020) ...................................................................... 9

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016).................................................................................... 4

*Lee v. Active Power, Inc.*,
29 F. Supp. 3d 876 (W.D. Tex. 2014)....................................................................... 7

*O'Connor v. Cory*,
382 F. Supp. 3d 534 (N.D. Tex. 2019) .................................................................... 10

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000).................................................................................... 4

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) .................................................................................. 10

*Rosenbaum v. Klein*,
   547 F. Supp. 586 (E.D. Pa. 1982) ................................................................................ 5

*Schott v. Nobilis Health Corp.*,
   211 F. Supp. 3d 936 (S.D. Tex. 2016) ......................................................................... 8

*SEC v. Bluepoint Inv. Counsel, LLC*,
   2021 WL 719647 (W.D. Wis. Feb. 24, 2021)............................................................... 2

*SEC v. GPL Ventures LLC*,
   2022 WL 158885 (S.D.N.Y. Jan. 18, 2022) ................................................................. 5

*SEC v. Rio Tinto plc*,
   41 F.4th 47, 49 (2d Cir. 2022) ..................................................................................... 5

*Smith v. Ayres*,
   845 F.2d 1360 (5th Cir. 1988) ..................................................................................... 3

*Takata v. Riot Blockchain, Inc.*,
   2020 WL 2079375 (D.N.J. Apr. 30, 2020) ................................................................... 7

*Vanderhoef v. China Auto Logistics Inc.*,
   2021 WL 3260849 (D.N.J. July 30, 2021)..................................................................... 9

*Zagami v. Nat. Health Trends Corp.*,
   540 F. Supp. 2d 705 (N.D. Tex. 2008) ......................................................................... 9

**REGULATIONS**

17 C.F.R. §229.701................................................................................................................ 2

17 C.F.R. §240.10b-5 ........................................................................................................... 3

**OTHER AUTHORITIES**

SEC Order Instituting Cease-and-Desist Proceedings,
   *In re Galena Biopharam, Inc.*, 2017 WL 3215775 (Apr. 10, 2017).............................. 2

Plaintiffs' Opposition confirms their case against Camber Defendants rises—and ultimately sputters—on a novel duty to disclose that comports with neither the text of the SEC document from which it supposedly derives, nor the SEC's guidance interpreting it.[1] On that shaky foundation, the Opposition only piles more defects—flouting the requirements for Rule 10b-5(b), scheme liability, scienter, and loss causation.

I. **Plaintiffs cannot substantiate their novel pure-omission theory—under Item 3.02 specifically, or Rule 10b-5 generally.**

A. **Plaintiffs ignore Item 3.02's text and flout the SEC's interpretive guidance.**

In a case about what Item 3.02 of Form 8-K requires, Plaintiffs' Opposition remarkably *never even mentions* Item 3.02's text, much less explains how Camber could have failed to timely disclose "an agreement enforceable against the registrant…under which the equity securities are to be sold," Form 8-K, when Camber timely disclosed every SPA. Instead, Plaintiffs claim Item 3.02 "accelerat[es]" Item 701's 10-Q and 10-K disclosure requirement. Opp.8-9. But Item 3.02's text says *when* one must disclose "the information specified in [certain] paragraphs…of Item 701," Form 8-K, and the SEC guidance confirms that what triggers Item 3.02's duty to disclose is an "agreement enforceable against the registrant"—exactly how Camber disclosed here:

> ***Pursuant to Item 701(e) of Regulation S-K***, the registrant must disclose the terms of, as applicable, the exercise of the [convertible securities] in the Item 3.02 Form 8-K. If the Item 3.02 Form 8-K that discloses the initial sale of the [convertible securities] also discloses the maximum amount of the underlying securities that may be issued through, as applicable, the exercise of the [convertible securities], then a subsequent Item 3.02 Form 8-K filing

---

[1] Abbreviations track those in Camber Defendants' Motion ("MTD"). Internal quotation marks, citations, and footnotes from quoted material have been omitted.

1

requirement is *not* triggered upon the exercise of the [convertible securities]. https://www.sec.gov/divisions/corpfin/guidance/8-kinterp (emphasis partially added); *see* 17. C.F.R. §229.701(e). Plaintiffs cannot conflate Item 701's introductory reference to "securities issued in exchange for…other securities" with Item 3.02's duty to disclose. Opp.8.

Tellingly, Plaintiffs have no case or SEC enforcement action applying Item 3.02 their way. The *Galena Biopharma* SEC enforcement action did not involve an Item 3.02 violation at all, *contra* Opp.20, but rather a fundamentally different situation—a company falsely represented that "there had been no sales of unregistered securities" during certain periods. 2017 WL 3215775, ¶20 (attached as Ex.19). Those affirmative, misleading statements make for classic 10b-5 liability and illustrate what is missing here. *Infra*.I.B.

With no good answer for the SEC guidance supporting Camber's disclosures, MTD.11-12, Plaintiffs resort to calling it a "loophole" undeserving of deference—despite elsewhere touting an SEC amicus brief. Opp.1,12; *see SEC v. Bluepoint Inv. Counsel, LLC*, 2021 WL 719647, at *20 (W.D. Wis. Feb. 24, 2021) (SEC staff accounting bulletin can "serve as persuasive authority"). Plaintiffs then posit that the guidance somehow *silently* exempts "floorless convertibles"—despite conceding elsewhere that the SEC knows how to "draw[] a distinction between typical convertible securities and…floorless Convertible securities." Opp.2,9,26. Neither distractive effort succeeds.

As for Camber's disclosures' substance, Plaintiffs find themselves arguing paradoxically (a) Camber's disclosures of what the various SPA tranches "would convert into" at a given price were too far below the "maximum amount" of potential conversion

shares, but (b) Camber's December 2020 disclosure of the absolute maximum convertible amount of 47 billion shares at the lowest par value was too "high" to be "meaningful." Opp.9-10. Which is it?

Plaintiffs cannot manufacture a concession that Camber's December 2020 disclosure was not "appropriate disclosure" by citing out-of-context SEC correspondence regarding Camber's compliance with Accounting Standards Committee Rule 505-10—not Item 3.02. Opp.Ex.A at 4. Nor can they discount Camber's SPA and conversion-formula disclosures, when (a) the SEC itself encourages investors to "fully understand the terms of the convertible security," including for "floorless" convertibles,[2] and (b) Kerrisdale could calculate dilution from those very formulas. MTD.29.

## B.　Plaintiffs cannot point to a misleading "statement."

The MTD challenged Plaintiffs to identify a "statement[] made" that was rendered "misleading" by the lack of share-count update, as Rule 10b-5 plainly requires. MTD.12-14; 17 C.F.R. §240.10b-5; *see also Heinze v. Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020) (rejecting for similarly-worded Rule 14a-9 a "pure-omission theory…untethered to any specific false or misleading statement"). Yet the Opposition identifies *no such statement*, firmly embracing the pure-omission mold by invoking the *Affiliated Ute* presumption of reliance (Opp.43) that the Fifth Circuit deems inherently inapplicable to Rule 10b-5(b) claims, which "always rest[] upon an affirmative statement." *Smith v. Ayres*,

---

[2]　https://www.investor.gov/introduction-investing/investing-basics/glossary/convertible-securities (SEC Office of Investor Education and Advocacy website's thoroughly explaining convertible securities and what shareholders "should find out" "[b]efore…invest[ing]").

845 F.2d 1360, 1363 (5th Cir. 1988).

Plaintiffs' Item 303 analogy rests on the Second Circuit's short side of a lopsided split, Opp.12, despite that court's own recognition that "a pure omission theory is…not strictly within the letter of Rule 10b-5." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 240 n.9 (2d Cir. 2016). Plaintiffs attempt to categorically distinguish *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000), and its progeny's rejection of freestanding Item 303 violations, calling them attributable only to the differing materiality standards. Opp.13. That is manifestly untrue—cases, including many cited at MTD.13-14, have relied on *Oran* and specifically required for 10b-5 liability that an Item 303 violation both (a) meet *Basic*'s materiality standard, <u>and</u> (b) render an affirmative statement misleading. *See, e.g.*, *In re Galena Biopharma, Inc. Sec. Litig.*, 336 F. Supp. 3d 378, 392 (D.N.J. 2018) ("Under *Oran*….Item 303 can give rise to a Rule 10b-5 claim *if the Item 303 omission renders other statements materially misleading*."). Nor can Plaintiffs credibly chalk up these courts' faithful applications of Rule 10b-5(b)'s text to the "particularities of a unique provision," Opp.13, when courts have applied the same principle to non-Item-303 claims. *E.g.*, *Bo Shen v. Exela Techs., Inc.*, 2021 WL 2589584, at *19 (N.D. Tex. June 24, 2021) (citing *Oran* and concluding "Item 10(e) of Regulation S-K cannot provide an independent basis for liability" without satisfying Rule 10b-5).

Finally, Plaintiffs illustrate the extraordinary breadth of their pure-omission theory, belatedly suggesting Camber's delay in filing quarterly reports *itself* is actionable. Opp.16 ("The scheme here included…refusing to file mandatory…10-Qs"). That would come as a surprise to the authors of the SEC amicus brief the Opposition cites, who carefully

4

distinguished between defendants "ma[king] 'statements' that were misleadingly incomplete" from those who "entirely fail to file a Form 10-K." SEC Amicus, 2017 WL 4004533, at *21 (2017). It would be equally unprecedented for the courts. *See Rosenbaum v. Klein*, 547 F. Supp. 586, 591 (E.D. Pa. 1982) (rejecting claim based not "on misrepresentations in reports filed, but simply a failure to file required reports"). And it would allow securities plaintiffs to wield every reporting-requirement provision as prepackaged 10b-5 liability—despite Plaintiffs' tacit concession that they have no private right of action to enforce Section 13 violations. MTD.14-15. The Court should reject that pathbreaking invitation.

## II.     Plaintiffs cannot rescue the Scheme Liability Claim.

### A.     No actionable deceptive act exists.

Plaintiffs' cases confirm that scheme liability attaches only to a *defendant's own* deceptive act, not its mere participation in a transaction in which another allegedly committed a deceptive act. *E.g.*, *SEC v. GPL Ventures LLC*, 2022 WL 158885, at *9 (S.D.N.Y. Jan. 18, 2022) ("defendant [wa]s alleged *not to have simply facilitated manipulative conduct*, but rather to be a coparticipant...in the manipulative scheme") (emphasis added).

Plaintiffs assert that "a scheme need not involve anything more than false statements or omissions," Opp.15—something the Second Circuit recently rejected, *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) ("misstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions")—but the issue is moot because Plaintiffs' predicate

5

omissions theory involving share-count updates fails. *Supra*.I. Plaintiffs cast about, searching for another "deceptive" act by Camber Defendants, to no avail.

***"Authoriz[ing]" Discover's sales.*** Plaintiffs do not dispute Camber's valid exemption for issuing conversion shares and "absolute" contractual obligation to do so. MTD.19. They instead suggest Camber "authoriz[ed]" Discover's *sales*—which the SAC did not (and cannot) allege. *Compare* Opp.16 (asserting Camber's "authorization" of "illegal sales of unregistered securities," citing SAC¶¶141-143), *with* SAC¶143 (alleging Camber "had to authorize the *issuance* of shares") (emphasis added). The Court should reject that sleight of hand.

***"Stock-pumping scheme."*** Plaintiffs offer a paraphrased summary of their "stock promotion" allegations, without remedying the SAC's fundamental failure to identify anything deceptive or manipulative about Camber's acquisitions or announcements. *See* MTD.16-18. To illustrate, Plaintiffs do not even try to identify a Camber duty to disclose the revenue of its startup *licensor* ESG Clean Energy (or explain how ESG's revenue made anything Camber said misleading). Perhaps the SAC's stock-promotion theory lacks coherence for a good reason: it entirely misidentified the forces behind Camber's fall 2021 stock-price increase. *See* Ex.20, Compl., *SEC v. Constantin, et al.*, 4:22-cv-04306, ¶¶36-62 (S.D. Tex. Dec. 13, 2022) (alleging social-media influencers orchestrated August-October 2021 "pump and dump" of Camber stock).

### B.      Rule 9(b) bars the SAC's barebones "scheme" allegations.

Rule 9(b) requires the SAC to "state with particularity the circumstances constituting fraud," yet Plaintiffs cannot articulate how the Scheme Liability Claim

6

satisfies Rule 9(b)'s "who, what, when, where, and how" pleading requirement. *See* MTD.20-21.

### III.    Plaintiffs detour around key scienter shortcomings.

#### A.    Unpleaded "facts" do not a strong inference of scienter make.

Plaintiffs' "prior-bad-acts" cases involved *symmetrical* prior and current alleged wrongdoing. *See Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375, at *2, *16 (D.N.J. Apr. 30, 2020) (SEC previously charged defendants accused of pump-and-dump scheme with similar schemes); *Gelfer v. Pegasystems, Inc.*, 96 F. Supp. 2d 10, 13-15 (D. Mass. 2000) ("questioned accounting practices…were sufficiently similar to those questioned in" earlier suit involving same defendants). And Plaintiffs' motive cases involved either massive insider trading and "large-scale fraudulent practices over time," *In re Cabletron Sys. Inc.*, 311 F.3d 11, 39 (1st Cir. 2002), or a "pressure to deliver immediate results" corresponding to the alleged fraud, *Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 878, 888-89 (W.D. Tex. 2014).

The SAC pleads none of that, so Plaintiffs try to embellish their way into a scienter pleading, with no regard for what the SAC and underlying SEC filings actually said.

| Opposition's Embellishment | SAC's Allegations/ Underlying SEC Filing |
|---|---|
| Doris "effectively misappropriated" funds for his "personal company." Opp.30. | No allegation Doris "misappropriated" any funds or personally profited from Discover's funding. |
| "Complaint's allegations of *Defendants'* insider trading." Opp.19 (emphasis added). | No allegation Doris sold a single Camber share or profited from alleged inflation. |

7

| | |
|---|---|
| Doris "owned nearly all of Viking's shares through convertible securities." Opp.30. | Viking publicly corrected an error to its convertible preferred shares' terms, MTD.Ex.14, and the SAC never alleges (and cannot) that Doris converted those since-corrected shares to control "95% of Viking's capital stock." *Contra* Opp.5. |
| Doris's "checkered history" and "violating the securities laws" would not "be a first" for him. Opp.37,39. | No allegation Doris violated securities laws, let alone was charged with any such wrongdoing. |
| "Doris previously deliberately disregarded and failed to disclose Viking's auditor's assertion." Opp.38. | Viking *disclosed* letter from its disgruntled former auditor. MTD.Ex.18. |

The Court should not be swayed by those efforts to manufacture facts not in the SAC.

### B.   No clear-and-obvious duty to disclose supports scienter.

Plaintiffs also must confront the bedrock scienter requirement for their lead omission theory—an "obvious duty to disclose." *In re BP p.l.c. Sec. Litig.*, 922 F. Supp. 2d 600, 627 (S.D. Tex. 2013); *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 955 (S.D. Tex. 2016) (rejecting scienter allegations that did "not sufficiently allege that [defendant] violated rules that were so clear and obvious"). Plaintiffs continue to conflate Camber's (a) *mandatory* Item 3.02 disclosures of the SPAs and (b) *voluntary* Item 8.01 share-count updates, suggesting that temporary non-disclosure of the latter demonstrates Camber Defendants "changed their minds about disclosure *requirements*." Opp.40 (emphasis added). That gets things exactly backwards.

Nor can Plaintiffs credibly characterize as a "strained argument" Camber's past disclosure practices' relevance to scienter, Opp.35, when Plaintiffs' own scienter cases *relied* on defendants' deviating from "past compliance with [mandatory] Item 404" in a

manner demonstrating they "were aware of the SEC's reporting requirements." *Zagami v. Nat'l Health Trends Corp.*, 540 F. Supp. 2d 705, 713 (N.D. Tex. 2008) (first quote); *Vanderhoef v. China Auto Logistics Inc.*, 2021 WL 3260849, at *4 (D.N.J. July 30, 2021) (second quote). This case presents the inverse—Camber previously and consistently *disclaimed* the mandatory nature of the very reporting obligation Plaintiffs seek to foist upon it.

Plaintiffs find no refuge in the special-circumstances (*i.e.*, "core-operations") imputation-of-facts theory. Opp.32-34. The point is not that Camber is too large to qualify for it, *contra* Opp.34; it is that the only *facts* pleaded—imputed or not—pertain to the baseline conversion notices and resulting increase to Camber's outstanding share count, which are not illustrative of scienter. Opp.32-33. Those details *beg* the clear-and-obvious-duty-to-disclose question; they do not answer it. *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 889 (N.D. Cal. 2020) (discussing core-operations theory and concluding "*even if* [defendants] were aware of" certain facts, "knowledge of the problem...is insufficient to infer that [defendants] acted with the intent to defraud or with deliberate recklessness in not reporting the issue publicly") (emphasis added). Plaintiffs cannot point to additional factual allegations from which the *equally plausible* inference is Camber Defendants schemed to defraud, rather than simply understood (and publicly communicated) their disclosure obligations differently from Plaintiffs' novel interpretation.

## IV.    Plaintiffs fail to salvage the Kerrisdale Report as a corrective disclosure.

Plaintiffs do not dispute the Kerrisdale Report derived from Camber's public filings

9

alone, which sets this case apart from ones where "the data itself is only available to a narrow segment of the public and not the public at large." *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014) (cited at Opp.11,43). And while it is "especially true under an efficient market theory" that a publicly-derived short report cannot meet the baseline requirement that a "corrective disclosure must disclose nonpublic information," *In re PolarityTE, Inc., Sec. Litig.*, 2020 WL 6873798, at *6 (D. Utah Nov. 22, 2020), Plaintiffs cite no case holding such reports can be corrective in *in*efficient markets. *See O'Connor v. Cory*, 382 F. Supp. 3d 534, 555 (N.D. Tex. 2019) (adopting Ninth Circuit's assessment that "the same loss causation analysis occurs in" efficient- and inefficient-market cases). Plaintiffs' attempt (Opp.43) to avoid their loss-causation problem by disavowing *Basic's* presumption of reliance and invoking *Affiliated Ute*— which is inapplicable to 10b-5(b) claims and 10b-5(a)/(c) claims based on affirmative-stock-pumping statements, *supra*.I—serves only to undercut the reliance element of Plaintiffs' claims, which has not otherwise been pleaded.

## V.    Control-person liability fails.

Plaintiffs concede control-person liability depends on "adequately ple[ading] the underlying Section 10(b) claims," Opp.45, which they have failed to do.

### CONCLUSION

The Court should dismiss the twice-amended SAC with prejudice.

10

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/  Danny David*
        Danny David
            *Attorney-In-Charge*
        Texas Bar No. 24028267
        Amy Pharr Hefley
        Texas Bar No. 24046046
        Anthony J. Lucisano
        Texas Bar No. 24102118
        Federal I.D. No. 3369146
        Frank Mace
        Texas Bar No. 24110609
        Federal I.D. No. 3385915
        Emily A. Rohles
        Texas Bar No. 24125940
        Federal I.D. No. 3715273
        910 Louisiana Street
        Houston, Texas 77002
        (713) 229-4055
        (713) 229-2855 (Fax)
        danny.david@bakerbotts.com
        amy.hefley@bakerbotts.com
        anthony.lucisano@bakerbotts.com
        frank.mace@bakerbotts.com
        emily.rohles@bakerbotts.com

        ATTORNEYS FOR DEFENDANTS
        CAMBER ENERGY, INC. AND JAMES A.
        DORIS

11

## CERTIFICATE OF WORD COUNT

I hereby certify under Rule 18.c of the Court's Procedures, as modified by the Court's August 11, 2022 order extending word court, Dkt. 68, that the foregoing reply contains 2,495 words, excluding words in sections specified in Rule 18.c.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on this 6th day of January, 2023.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley