# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD E. COGGINS, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| | § | Case No. 4:21-cv-03574 |
| v. | § § | |
| CAMBER ENERGY, INC., JAMES A. DORIS, and FRANK W. BARKER, JR., | § § § § | |
| Defendants. | § § | |

# DISCOVER DEFENDANTS' REPLY IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 2

A.     DISCOVER WAS NOT EXCLUSIVELY LIMITED TO SELLING UNDER
       THE NON-EXCLUSIVE SAFE HARBOR OF RULE 144 ............................... 2

B.     PLAINTIFFS FAIL TO SHOW THAT DISCOVER WAS EITHER AN
       UNDERWRITER OR AN AFFILIATE, AND DISCOVER WAS ENTITLED
       TO SELL PURSUANT TO §4(a)(1) ................................................................. 5

C.     PLAINTIFFS DID NOT ALLEGE A §10(b) MARKET MANIPULATION
       CLAIM ............................................................................................................. 8

D.     DISCOVER HAD NO DUTY TO DISCLOSE .............................................. 10

E.     PLAINTIFFS FAIL TO ALLEGE CONTEMPORANEOUS TRADING FOR
       THEIR  §20A CLAIM ..................................................................................... 11

F.     DISCOVER WAS NOT A CAMBER "INSIDER" FOR PURPOSES OF §10(b)
       OR §20A .......................................................................................................... 12

G.     PLAINTIFFS' BORROWED, UNRELATED ALLEGATIONS DO NOT SHOW
       SCIENTER ...................................................................................................... 13

H.     DISCOVER'S ALLEGED STOCK SALES RAISE NO INFERENCE OF
       SCIENTER ...................................................................................................... 14

I.     "SPECIAL CIRCUMSTANCES" DO NOT SHOW SCIENTER ..................... 14

III.   CONCLUSION ................................................................................................. 15

i

# TABLE OF AUTHORITIES

**CASES**             **PAGE(S)**

*Ackerberg v. Johnson,*
892 F.2d 1328 (8th Cir. 1989)..................................................................... 5, 6

*Alack v. Jaybar, LLC,*
2012 WL 13005346 (E.D. La. Aug. 21, 2012) ................................................. 12

*Ashcroft v. Iqbal,*
566 U.S. 662 (2009) .............................................................................................4

*Berckeley Inv. Group, Ltd. v. Colkitt,*
455 F.3d 195 (3rd Cir. 2006) ...................................................................... 5, 6

*Carlton v. Cannon,*
2016 WL 3959164 (S.D. Tex. July 22, 2016) ................................................. 15

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.,*
2016 WL 4095973 (S.D. Tex. Aug. 2, 2016) ................................................... 11

*Ernst v. Hochfelder,*
425 U.S. 185 (1976)..............................................................................................9

*GFL Advantage Fund, Ltd. v. Colkitt,*
272 F.3d 189 (3rd Cir. 2001) ...............................................................................9

*Hack v. Wright,*
396 F. Supp. 3d 720 (S.D. Tex. 2019)...................................................... 5, 7, 9

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.,*
309 F. Supp. 3d 100 (S.D.N.Y. 2018) ........................................................... 14

*Klein v. Altria Grp., Inc.,*
525 F. Supp. 3d 638 (E.D. Va. 2021) ............................................................. 11

*In re Merrill Lynch Auction Rate Sec. Litig.,*
704 F. Supp. 2d 378 (S.D.N.Y. 2010) ........................................................... 10

*Noto v. 22nd Century Grp., Inc.,*
35 F.4th 95 (2nd Cir. 2022)..................................................................................9

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*,
    482 F.3d 372 (5th Cir. 2007)................................................................9

*Salman v. U.S.*,
    137 S.Ct. 420 (2016).................................................................... 13

*Santa Fe Indus. v. Green*,
    430 U.S. 462 (1977).......................................................................9

*SEC v. Big Apple Consulting USA, Inc.*,
    783 F.3d 786 (11th Cir. 2015)........................................................6

*SEC v. Panuwat*,
    2022 WL 633306 (N.D. Cal. Jan. 14, 2022).................................... 12

*Strougo v. Barclays* PLC,
    312 F.R.D. 307 (S.D.N.Y. 2016)................................................... 10

*Trzeciak v. Allstate Property and Casualty Ins. Co.*,
    569 F. Supp. 3d 640 (E.D. Mich. 2021) ........................................ 11

*U.S. v. O'Hagan*,
    521 U.S. 642 (1997)................................................................... 13


STATUTES

15 U.S.C. § 77d(a)(1) ....................................................... 3, 4, 5, 6, 7

15 U.S.C. § 78q....................................................................................4

15 U.S.C. § 78q—1 ..............................................................................4

Nev. Rev. Stat. §104.8407 ...................................................................4


OTHER AUTHORITIES

17 C.F.R. § 230.144 ............................................................ 2, 3, 4, 6,

17 C.F.R. § 230.144(c) ........................................................................2

17 C.F.R. § 230.144(d)(1)(i)................................................................2

17 C.F.R. § 230.144(d)(1)(ii) ...............................................................................2

17 C.F.R. § 230.405 ("Affiliate")........................................................................7

17 C.F.R. § 230.405 ("Control") .........................................................................8

17 C.F.R. §§ 240.17Ac2-1–17Ad-21T ...............................................................4

80 Fed. Reg. 81981 .............................................................................................4

## I.   INTRODUCTION

Beginning years before the putative class period, Discover purchased millions of dollars' worth of convertible preferred stock from Camber in numerous transactions. Motion to Dismiss (Dkt. 29) ("MTD") 3. Camber disclosed these purchases, the conversion formula, and that Camber's obligation to deliver common stock upon conversion "is absolute and unconditional regardless of the dilutive effect that such issuance may have." Series C COD at §I.G, Exhibit 3.1 to 7/9/19 Form 8-K.[1] Discover disclosed that it purchased preferred stock, which is convertible into common stock at any time, and that it may hold up to 9.99% of Camber's total outstanding common shares "at any one time." 12/27/18 Schedule 13G (at 4).[2]

Discover converted and sold shares in 2021 pursuant to applicable registration exemptions, including, allegedly, during the class period. According to Plaintiffs, this publicly disclosed equity financing magically

---

[1]
https://www.sec.gov/Archives/edgar/data/0001309082/000158069519000270/ex3-1.htm

[2]
https://www.sec.gov/Archives/edgar/data/0001309082/000161577418015053/s114849_sc13g.htm

1

became securities fraud when the issuer delayed filing its quarterly reports.

In their Opposition ("Opp."), Plaintiffs mostly ignore Discover Defendants' MTD arguments and impermissibly attempt to amend the SAC. Both approaches are unavailing, and the SAC should be dismissed.

## II.   ARGUMENT

**A.   DISCOVER WAS NOT EXCLUSIVELY LIMITED TO SELLING UNDER THE NON-EXCLUSIVE SAFE HARBOR OF RULE 144**

Plaintiffs wrongly insist that Discover could sell Camber common shares *only* under Rule 144, and because Camber was not current in its filings, the non-exclusive safe harbor under Rule 144(d)(1)(i)[3] was not available, and Discover's alleged sales were therefore "illegal." Opp.24-28.

This is an erroneous legal conclusion, MTD 13-16, that finds no factual support in the SPA requirement that Camber must remain current in its public filings and make information available under Rule

---

[3] Under Rule 144(d)(1)(ii) sales may be made after one year, even if the issuer is not current.

144(c), to enable Discover to use the Rule 144 safe harbor if it so desired. Opp.24.

Rule 144 provides for shorter holding periods after which one can sell and be deemed not an underwriter—6 months or one year—versus a two-year holding period under §4(a)(1). Accordingly, the SPAs required Camber to remain current so that Discover had the *option* of selling pursuant to Rule 144. 11/23/18 SPA at §IV.B at 13.[4] The SPAs contain no *requirement* that Discover only sell pursuant to Rule 144.

Nor does Camber's transfer agent's website support Plaintiffs' speculation, Opp.16, because they fail to note that the site provides instructions for *both* Rule 144 and §4(a)(1) transfers.[5]

Plaintiffs' assertion that Discover "*must have*" falsely represented to Camber's transfer agent that Camber was current in its public filings is both speculative and contrary to Camber's disclosures. Opp.28. *See*

---

[4] https://www.sec.gov/Archives/edgar/data/1309082/000158069518000505/ex10-1.htm.

[5] http://cleartrustonline.com/shareholder-center ("Section 4(A)1 Legend Removal Packet").

6/17/22 Form S-1 at 13[6] ("[W]ith respect to its conversions after May 13, 2021, Discover submitted legal opinions opining that the shares could be resold pursuant to Section 4(a)(1) of the Securities Act of 1933"—*not* Rule 144).

Plaintiffs' assertion is also implausible because the transfer agent's compliance department would simply look up Camber's filings on the SEC's website and see if it was current. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Transfer agents are not simply passive administrators; they are subject to both SEC and state regulation. *See* 15 U.S.C. §§78q & 78q–1; 17 CFR §§240.17Ac2-1–17Ad-21T; Nev. Rev. Stat. §104.8407. "Because transfer agents are often the party responsible for affixing, tracking, and removing restrictive legends, they play an important role in helping to prevent unregistered securities distributions that violate Section 5 of the Securities Act." 80 Fed. Reg. 81981.[7] The transfer agent had an independent obligation to ensure the shares could be issued without a

---

[6] https://www.sec.gov/Archives/edgar/data/1309082/000147793222004511/cei_s1.htm.

[7] https://www.federalregister.gov/documents/2015/12/31/2015-32755/transfer-agent-regulations.

restrictive legend. "There can be no doubt that transfer agents are gatekeepers." 12/17/14 SEC Statement.[8]

## B.    PLAINTIFFS FAIL TO SHOW THAT DISCOVER WAS EITHER AN UNDERWRITER OR AN AFFILIATE, AND DISCOVER WAS ENTITLED TO SELL PURSUANT TO §4(a)(1)

Plaintiffs now argue that §4(a)(1) was also unavailable, either because Discover was an underwriter or because it was a Camber affiliate. Opp.24-28; *see Hack v. Wright*, 396 F. Supp. 3d 720, 737 n.13 (S.D. Tex. 2019) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.").

A two-year holding period prior to sale "is sufficient to negate the inference" that the seller is an underwriter. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 213 (3rd Cir. 2006); *Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989) ("courts look to whether the security holder has held the securities long enough to negate any inference that his intention at the time of acquisition was to distribute them to the public.

---

[8] https://www.sec.gov/news/statement/spch121714-2laa.

Many courts have accepted a two-year rule of thumb to determine whether the securities have come to rest."); MTD 16-18.

All shares that Discover converted in 2021 "were issued and fully paid for on or prior to December 4, 2018." 6/17/22 Form S-1 at 13.[9] The *latest* that Discover could have purchased the shares was more than 2.5 years prior to the class period, negating any inference that Discover was an underwriter.

Plaintiffs ignore this black-letter law and instead discuss a proposed amendment to Rule 144 that (a) has not occurred, and (b) is irrelevant to Discover's ability to sell pursuant to §4(a)(1). Opp.26-27. The applicable holding periods under Rule 144 and §4(a)(1) exist to provide bright-line rules for when a seller is acting with an intent to distribute. *Berckeley*, 455 F.3d at 213; *Ackerberg*, 892 F.2d at 1336. Discover played by the rules, and cannot be deemed an underwriter.

Plaintiffs argue that Discover somehow did not satisfy the two-year rule because it arguably could not sell its shares for a small window of time when Camber ran out of shares. Opp.26-27 (citing *S.E.C. v. Big*

---

[9] https://www.sec.gov/Archives/edgar/data/1309082/000147793222004511/cei_s1.htm

*Apple Consulting USA, Inc.,* 2011 WL 13143143, at \*2 n.3 (M.D. Fla. Dec. 29, 2011)). The defendants in *Big Apple*, unlike Discover, sold their stock almost immediately. *Id.* at \*2. The footnote given so much weight by Plaintiffs merely points out that the small portion of stock defendants could not sell had nothing to do with their investment intent. *Id.* at \*2 n.3. Under Plaintiffs' reasoning, any person who purchases convertible securities and later converts and sells them is an underwriter, but Plaintiffs cite no authority for this novel proposition, which, if true, would kill the market for all follow-on offerings, including this common form of small-cap equity financing.

Plaintiffs next contend that §4(a)(1) was unavailable because Discover was a Camber affiliate, and this exemption is not available to issuer affiliates. Opp.28. The SAC does not allege that Discover is a Camber affiliate and Plaintiffs cannot amend the SAC via their Opposition. *Hack*, 396 F. Supp. 3d at 737 n.13.

Regardless, the affiliate contentions fail because Plaintiffs do not plead specific facts plausibly showing Discover's control of Camber. An affiliate is one who controls or is controlled by another person. 17 CFR §230.405 ("Affiliate"). Control means "the power to direct or cause the

7

direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.* ("Control").

Discover was not Camber's majority owner; Discover could hold no more than 9.99% of Camber's shares. MTD 36-39. The SPAs also limited Discover's ability to vote its shares or to take other actions to influence or change Camber management policies. November 2018 SPA at §IV.I ("Activity Restrictions") (at 15).[10]

Plaintiffs' sole supporting fact is an SPA provision permitting Discover's review of any filings or press releases relating to Discover or the SPA transactions. Opp.28. This single provision is woefully insufficient to supply the particularized allegations of control required to adequately plead a §10(b) claim. MTD 37.

## C.   PLAINTIFFS DID NOT ALLEGE A §10(b) MARKET MANIPULATION CLAIM

The Opposition introduces a purported §10(b) claim based on market manipulation. Opp.16 ("[E]ach Defendant engaged in at least one

---

[10] https://www.sec.gov/Archives/edgar/data/1309082/000158069518000505/ex10-1.htm

manipulative act"); 18; 20-22. No variant of the word "manipulate" appears in the SAC. *Hack*, 396 F. Supp. 3d at 737 n.13.

In any event, Discover's actions—converting and selling stock in full compliance with publicly disclosed SPAs and CODs—cannot constitute market manipulation. The Supreme Court has identified only "a few examples" of market manipulation, "such as wash sales, matched orders, and rigged prices." *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 390 (5th Cir. 2007) (citing *Ernst v. Hochfelder*, 425 U.S. 185, 205 & n.25 (1976)); *see Santa Fe Indus. v. Green*, 430 U.S. 462, 476-77 (1977). Discover is not alleged to have done anything like this.

Nor is Discover alleged to have "injected inaccurate information into the marketplace." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 106 (2nd Cir. 2022); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 205 (3rd Cir. 2001). Instead, Plaintiffs allege that Discover had a duty to disclose its conversions and/or its sales—an allegation that is demonstrably false. MTD 20-24. Even if omitting to disclose accurate information into the market (as opposed to injecting inaccurate information) could support a market manipulation claim—a position

9

Plaintiff's authority does not support—without a duty to disclose there can be no omission.

Plaintiffs cite no cases holding that the conversion and sale of convertible securities constitutes market manipulation—particularly where, as here, the purchases and terms of conversion were fully disclosed. *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 390 (S.D.N.Y. 2010) ("The market is not misled when a transaction's terms are fully disclosed.").

Plaintiffs did not allege a §10(b) based upon market manipulation, and even if they had such claim would fail.

## D.   DISCOVER HAD NO DUTY TO DISCLOSE

Discover had no duty to disclose its conversions or sales, whether under Section 13 or otherwise. MTD 20-24, 31-34. Plaintiffs now argue that Discover had a generalized obligation to disclose that it was manipulating the market. Opp.20-22. Plaintiffs did not allege this duty in the SAC, and there is no such generalized disclosure obligation.

First, as shown, Plaintiffs did not allege a market manipulation claim. Second, even assuming Discover's legal sales were somehow illegal, "there is no general duty to disclose illegal conduct." *Strougo v.*

10

*Barclays* PLC, 312 F.R.D. 307, 319 (S.D.N.Y. 2016); *Trzeciak v. Allstate Property and Casualty Ins. Co.*, 569 F. Supp. 3d 640, 648 (E.D. Mich. 2021) (courts reject the "circular argument" that a defendant's "nondisclosure itself created a duty to disclose"). And while there may be a duty to make a prior disclosure not misleading, *Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 663 (E.D. Va. 2021), Discover did not make any prior disclosures requiring correction.

## E.   PLAINTIFFS FAIL TO ALLEGE CONTEMPORANEOUS TRADING FOR THEIR §20A CLAIM

Alleging a §20A claim requires specifically alleging when the plaintiff purchased shares and when the defendant sold them, which must be at most within "a few days" of each other. *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 2016 WL 4095973, at *38 (S.D. Tex. Aug. 2, 2016).

In each of Plaintiffs' cases the purchase and sale dates were specifically alleged. Opp.47. In stark contrast, here Plaintiffs allege an 83-day class period, identify no specific dates in that period on which Discover sold, and identify only six days on which one of the Plaintiffs purchased, all within the last seven trading days in the period. MTD 31.

11

This is insufficient. *Alack v. Jaybar, LLC*, 2012 WL 13005346, at \*7 (E.D. La. Aug. 21, 2012).

## F.   DISCOVER WAS NOT A CAMBER "INSIDER" FOR PURPOSES OF §10(b) OR §20A

Plaintiffs rely on cases involving shares sold by an issuer's officers, directors, and employees, *i.e.*, insiders. Opp.19, 30. Such authority is inapposite because Discover was a contractual *counterparty* to Camber in the complained-of transactions, not an *insider*. Discover owed no duties to Camber. MTD 5-6, 23-24. In contrast, in *SEC v. Panuwat*, 2022 WL 633306 (N.D. Cal. Jan. 14, 2022), cited by Plaintiffs, the defendant employee was found to have breached a duty to his employer by using its information to buy stock options in another company. *Id.* at \*1; Opp.19.

Discover is accused of doing what it contracted to do—submit notices of conversion to Camber's transfer agent, and receive common shares for its preferred shares. MTD 3-6. Any information revealed by the exercise of these fully disclosed contractual rights does not void them and transmogrify into material non-public information whenever Camber's public filings are delayed.

Nor do Plaintiffs show insider trading based upon misappropriation of Camber's material nonpublic information. This theory requires

12

showing, among other things, that Discover misappropriated confidential information in breach of a pre-existing duty of trust and confidence to Camber. *U.S. v. O'Hagan*, 521 U.S. 642, 652 (1997). "In such a case, the defendant breaches a duty to, and defrauds, the source of the information, as opposed to the shareholders of his corporation." *Salman v. U.S.*, 137 S.Ct. 420, 425 n.2 (2016). Because Discover owed no duty to Camber, Plaintiffs fail to allege a violation of §10(b) for insider trading under a misappropriation theory.

## G. PLAINTIFFS' BORROWED, UNRELATED ALLEGATIONS DO NOT SHOW SCIENTER

Plaintiffs defend their misguided attempt to establish scienter through never-proven, decade-old allegations from cases against *one* of the Discover Defendants (Kirkland) against whom little else is alleged. Opp.36-39. Those cases did not involve securities fraud claims, the allegations were never proven, Kirkland never paid a penny, and he was given a full release. MTD 26-27. Plaintiffs' authority that "prior allegations involving the same fraudulent manipulations," can bear on scienter, Opp.36, is irrelevant given Plaintiffs' allegations are not the same.

13

## H.   DISCOVER'S ALLEGED STOCK SALES RAISE NO INFERENCE OF SCIENTER

Plaintiffs' are wrong that Discover's alleged profit motive is sufficient to establish scienter. Opp.30. Every investor has a profit motive; there is nothing sinister about that. *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 119 (S.D.N.Y. 2018).

Plaintiffs' authority involves secret stock sales by *insiders*—officers and directors—not counterparties like Discover. Opp.30. Moreover, Plaintiffs completely ignore that under the COD's conversion formula a lower market price means Discover receives more common shares for each preferred share converted, so a drop in price would not hurt it. Amended and Restated Series C COD at Section I(G) (at 7-13).[11] Discover's alleged stock sales raise no inference of scienter.

## I.   "SPECIAL CIRCUMSTANCES" DO NOT SHOW SCIENTER

The "special circumstances" test applies to officers, and Plaintiffs cite no authority applying it to counterparties, much less to counterparty affiliates. Opp.32-34. "[O]nly in the rare case will a strong inference of

---

[11] https://www.sec.gov/Archives/edgar/data/0001309082/000158069519000270/ex3-1.htm

scienter be drawn from an officer's position in the company." *Carlton v. Cannon,* 184 F. Supp. 3d 428, 478-79 (S.D. Tex. 2016). This is not that rare case.

### III.   CONCLUSION

For these reasons, the SAC should be dismissed.


Respectfully submitted,        **EDMUNDSON SHELTON WEISS PLLC**

> By: */s/  Jesse Z. Weiss*
> Jesse Z. Weiss (SBN: 24013728)
> *Attorney-in-Charge*
> Ryan T. Shelton (SBN: 24037484)
> 317 Grace Lane, Suite 210
> Austin, Texas 78746
> Telephone:  (512) 596-3058
> Facsimile:   (512) 532-6637
> Email:  jesse@eswpllc.com
>              ryan@eswpllc.com

**Attorneys for Discover Defendants**

## Certificate of Compliance

I certify that the total number of words in the motion, exclusive of the caption, prefatory tables, the signature block, and the required certifications, is 2,466 words.

/s/ *Jesse Z. Weiss*
Jesse Z. Weiss

## Certificate of Service

I certify that on January 6, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

/s/ *Jesse Z. Weiss*
Jesse Z. Weiss

16